IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISIONS

| | |
|---|---|
| ALESA B., § | |
|    PLAINTIFF, § | |
| § | |
| V. § | CASE NO. 3:18-CV-1289-B-BK |
| § | |
| ANDREW M. SAUL, § | |
| COMMISSIONER OF THE SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
|    DEFENDANT. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636 and *Special Order 3*, Plaintiff's motion for summary judgment and Defendant's responsive brief, which the Court construes as a cross-motion for summary judgment, are now before the Court.[1] Doc. 16; Doc. 17. For the reasons that follow, Plaintiff's *Motion for Summary Judgment* should be **GRANTED**, Defendant's construed *Motion for Summary Judgment* should be **DENIED**, the Commissioner's decision should be **REVERSED,** and this case should be **REMANDED** for further proceedings.

---

[1] Despite the requirements of N.D. Tex. Local Rule 9.1 and this Court's clear instructions in its *Scheduling Order*, Doc. 15 at 3, Defendant has repeatedly filed response briefs rather than cross-motions for summary judgment. Had the Court not construed Defendant's responsive brief as a summary judgment motion and its recommendation been in favor if Defendant, no final disposition of this administrative appeal would have been appropriate, and this case would still pend. Defendant is thus advised to read the Court's scheduling order more carefully in the future and comply with the instructions set forth therein.

**I.     BACKGROUND**

    **A.  Procedural History**

Plaintiff seeks judicial review of a final decision of the Commissioner denying her claim for disability insurance benefits and supplemental security income under Title II of the Social Security Act ("Act").  Plaintiff applied for benefits in 2014, alleging that she had been disabled since March of that year.  Doc. 13-1 at 111, 121, 131-33, 143, 153-54, 346-55.  Plaintiff's claim was denied at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. §405(g).  Doc. 13-1 at 3-13; Doc. 13-1 at 14-32; Doc. 13-1 at 155-57.

    **B.  Factual Background**

Plaintiff was 56 years old on the date of the hearing before the administrative law judge ("ALJ").  Doc. 13-1 at 45.  She had a high school diploma and a job training course in banking, with past relevant work experience as a childcare worker, caregiver for the elderly, and accounting clerk.  Doc. 13-1 at 45-47, 50; Doc. 13-1 at 88.  In terms of Plaintiff's pertinent medical history, she has been diagnosed with uncontrolled diabetes, painful neuropathy, non-proliferative diabetic retinopathy ("NPDR"), retinal edema, and other ailments. Doc. 13-2 at 2; Doc. 13-2 at 125, 137; Doc. 13-2 at 302.

In January 2015, Plaintiff went to an emergency department for right eye pain, blurred vision, and visual disturbance, where she was diagnosed with diabetic retinopathy and retinal edema.  Doc. 13-2 at 112, 125.  She reported that her vision had been worsening for months. Doc. 13-2 at 112.  In February 2015, Plaintiff was diagnosed with bilateral cataracts.  Doc. 13-2 at 140.  The same month, she underwent bilateral laser surgery for macular edema.[2]  Doc. 13-2

---

[2] Macular edema is the build-up of fluid in the center of the retina, which results in distorted vision. https://nei.nih.gov/health/macular-edema/fact_sheet (last visited Aug. 9, 2019).

at 152, 154.  In October 2015, Plaintiff underwent bilateral eye injections for macular edema and NPDR.  Doc. 13-2 at 302.  In April 2016, Plaintiff received an injection in her left eye for macular edema.  Doc. 13-3 at 97.  The following month, Plaintiff presented to the hospital with severe NPDR and macular edema, complaining of visual disturbance.  Doc. 13-3 at 127.  It was noted that glaucoma was suspected in both eyes, and she received bilateral eye injections.  Doc. 13-3 at 127, 130.  In August 2017, Plaintiff returned to the hospital with a headache "stemming from [her] eyes" and complained of chronic blurry vision, but she was unable to complete an eye examination because of the vision problems.  Doc. 13-3 at 615, 617.

    In terms of her diabetic neuropathy, in February 2015, Plaintiff reported that she could not feel her feet due to numbness, she had problems with balance and walked with a broad base and swayed side to side.  Doc. 13-2 at 138, 222.  She could not toe or heel walk, and the feeling in both legs from toes to knees was impaired to temperature, pin prick, and vibration.  Doc. 13-2 at 141, 222.  In February 2015, April 2015 and January 2016, neurologist Dr. Ram N. Narayan, M.D. stated in his progress notes that Plaintiff's "neuropathy has been quite disabling," and he issued fall precaution orders on a number of occasions.  Doc. 13-2 at 142, 223; Doc. 13-2 at 311; Doc. 13-2 at 312; Doc. 13-2 at 246.  During her January 2016 appointment, Plaintiff reported to Dr. Narayan that her neuropathic pain symptoms had worsened, she had "severe burning pain" and numbness in her feet, and her balance continued to worsen.  Doc. 13-2 at 310.

    The record is also replete with references to the edema in Plaintiff's lower extremities.  Doc. 13-2 at 81; Doc. 13-2 at 81; Doc. 13-2 at 168, 177; Doc. 13-2 at 325; Doc. 13-3 at 254, 419, 515, 524.  Plaintiff testified that after taking prescription medication for the edema, she has to urinate two to three times per hour.  Doc. 13-1 at 95.  Additionally, Plaintiff has osteoarthritis,

degenerative joint disease, and pain and decreased range of motion in both shoulders.  Doc. 13-1 at 20; Doc. 13-2 at 325, 327; Doc. 13-3 at 420.

In January 2015, one of Plaintiff's treating physicians, Dr. Arjumand Ghayas, M.D., wrote a "medical statement" asserting that Plaintiff had uncontrolled diabetes complicated by severe neuropathy, severe burning in both feet, and dizzy spells among other conditions.  Doc. 13-2 at 98.  Dr. Ghayas noted that due to Plaintiff's health, it would be very difficult for her to return to work.  Doc. 13-2 at 98.  In February 2015, Dr. Narayan wrote a similar statement, indicating that Plaintiff was seeing him for "debilitating neuropathy that is causing her significant gait and balance problems."  Doc. 13-2 at 99.

### C. The ALJ's Findings

The ALJ initially denied Plaintiff benefits in April 2016.  Doc. 13-1 at 161.  Upon remand by the Appeals Council in October 2016, the ALJ convened another hearing in November 2017.  Doc. 13-1 at 81; Doc. 13-1 at 167.  In April 2018, the ALJ issued a new decision, holding that Plaintiff had the severe impairments of osteoarthritis, degenerative joint disease, obesity, Type II diabetes mellitus, neuropathy, kidney disease, diastolic dysfunction, hypertensive heart disease, left ulnar mononeuropathy, carpal tunnel syndrome, and sarcoidosis.  Doc. 13-1 at 20.  The ALJ stated that there was no evidence that Plaintiff's macular degeneration and NPDR negatively affected her ability to work.  Doc. 13-1 at 20.  The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform a range of sedentary work, including her prior work as an accounting clerk, and she was thus not disabled under the Act.  Doc. 13-1 at 20-21, 23-24.

**II.     APPLICABLE LAW**

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

## III. ANALYSIS

### A. Parties' Arguments

Plaintiff first argues that the ALJ applied the incorrect standard in assessing the severity of her impairments because she misstated the standard set forth in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). Doc. 16 at 5. Plaintiff maintains that she was harmed by the error because the record establishes the presence of additional impairments that affect her ability to work, to wit (1) diabetic retinopathy and retinal edema which cause pain and blurred vision; (2) cataracts; (3) macular edema; (4) edema in her lower extremities for which she needed to elevate her legs;

6

(5) urinary frequency caused by the prescription drug that treats the edema; (6) left partial rotator cuff tear; and (7) decreased range of motion in both shoulders. Doc. 16 at 6-9.

Defendant responds that because the ALJ proceeded past the second step of the sequential evaluation, it is irrelevant that she did not refer to *Stone* in assessing the severity of Plaintiff's impairments. Doc. 17 at 2-3. Defendant further contends that the additional conditions of which Plaintiff complains did not cause any specific limitations nor was any alleged error harmful. Doc. 17 at 3-6.

### B. Analysis

Without doubt, the ALJ applied the incorrect *Stone* standard in defining the term "severe" impairment or combination thereof as:

> *significantly limiting* an individual's ability to perform basic work activities. An impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that *would have no more than a minimal effect* on an individual's ability to work.

Doc. 13-1 at 18-19 (emphasis added); *cf. Stone*, 752 F.2d at 1101 (holding that "an impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it *would not be expected to interfere* with the individual's ability to work, irrespective of age, education or work experience.") (alterations omitted) (emphasis added); *cf. Bradford v. Astrue*, 3:10-cv-2302-BK, 2011 WL 1297528, at *5 (N.D. Tex. April 4, 2011) (Toliver, J.) (holding impermissible under *Stone* an ALJ's statements that an impairment or combination thereof is "severe if [1] "it significantly limits an individual's ability to perform basic work activities" and [2] medical and other evidence establish only a slight abnormality or combination thereof that "would have no more than a minimal effect on an individual's ability to work") (collecting cases).

7

As Defendant posits, *Stone* error can be harmless if the ALJ proceeds beyond the second step of the sequential analysis – but Defendant errs in characterizing that result as though it is an inevitability.  In cases where the ALJ does not explicitly find an impairment to be severe, a *Stone* error is not reversible if the ALJ proceeded beyond the second step of the five-step analysis in assessing <u>all</u> of the claimant's impairments, thereby allowing the district court to infer that the ALJ found the impairment severe.  In other words, the district court properly can draw this inference where the ALJ considers the impairments in question at later stages of the five-step sequential analysis, which stages are premised on a finding at the second step of the analysis that the impairments were severe.  *See Reyes v. Sullivan*, 915 F.2d 151, 154 & n.1 (5th Cir. 1990) (holding that the court must infer that an ALJ found an impairment to be severe when the ALJ proceeded to the third step of the sequential analysis in evaluating the claim).  This is to be distinguished from the situation where the ALJ commits a *Stone* error by applying an incorrect severity standard, rejects one or more of the claimant's impairments as non-severe based on that error, and proceeds to the later steps of the sequential analysis only with respect to the impairments he/she found to be severe.  *See Loza v. Apfel*, 219 F.3d 378, 393, 399 (5th Cir. 2000).

In this case, after applying the wrong severity standard, the ALJ did make note of the bulk of Plaintiff's claimed impairments at step four of the sequential evaluation process, namely her lower extremity edema, urinary frequency, and tears in both rotator cuffs.  However, there is no indication whatsoever that, at that point, the ALJ also took into account Plaintiff's impairments of diabetic retinopathy, retinal and macular edema, and cataracts.  Indeed, the ALJ explicitly found that there was no evidence that Plaintiff's macular degeneration and NPDR negatively affected her ability to work.  Doc. 13-1 at 20.  This was error in light of the medical

records evidencing Plaintiff's blurred vision, visual disturbances, and eye pain. *See Loza*, 219 F.3d at 399.

Of course, remand is not required if the error was harmless. *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). Unfortunately, here, it was not. Put simply, the ALJ's decision might have been different if she had considered Plaintiff's visual impairments under the proper standard and assessed the effect the impairments may have on Plantiff's ability to work. *See Reyes*, 915 F.2d at 154 & n.1. Accordingly, reversal and remand are warranted.[3]

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment* should be **GRANTED**, Defendant's construed *Motion for Summary Judgment* should be **DENIED**, the Commissioner's decision should be **REVERSED,** and the case should be **REMANDED** for further proceedings.

**SO RECOMMENDED** on August 20, 2019.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

---

[3] While reversal is required on this basis alone, the Court writes further to point out two other potential errors in the proceedings that counsel raised herein. During the administrative hearing, the ALJ acknowledged that additional medical records that postdated her prior decision had been filed as late as November 2017. Doc. 13-1 at 81-82. In the subsequent opinion, the ALJ stated that she had considered the additional 18 months of records in reaching her conclusion that Plaintiff could work. Doc. 13-1 at 23. ALJs, however, are not to "play doctor" and render their own interpretations of medical evidence in assessing a claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). Additionally, the ALJ rejected the opinions of two treating physicians that Plaintiff's medical condition was debilitating without contravening expert medical opinions and without applying the five factors set forth in 20 C.F.R. 404.1527 in violation of *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) (discussing how an ALJ must consider and address a treating physician's opinion).

9

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(B). An objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).